# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MICHAEL BUSA and )
STEVEN MPISTOLARIDES, )
                    )
                    )    84 C 6525
        Plaintiffs, )
                    )
                    )
        v. )    Hon. Charles R. Norgle
                    )
The CITY OF CHICAGO, and )
EUGENE BARNES, in his capacity as )
Acting Commissioner of the )
Department of Sewers, )
                    )
        Defendants. )

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Plaintiffs' Petition for Rule to Show Cause to Enforce <u>Shakman</u>

Settlement. For the following reasons, the Petition is denied.

## I. BACKGROUND

Plaintiffs Michael Busa and Steven Mpistolarides initially filed this case in 1984 alleging

that they were terminated from their positions in the City of Chicago's Department of Sewers in

violation of 42 U.S.C. § 1983 and the <u>Shakman</u> consent decree.[1] The parties settled the case and

submitted an Agreed Judgment Order (the "Order") to the Court, which incorporated the terms of

the parties' Settlement Agreement (the "Agreement"). As part of the settlement, the City

---

[1] <u>See</u> <u>Shakman v. Democratic Organization of Cook County</u>, 481 F. Supp. 1315 (N.D. Ill. 1979).

reinstated Plaintiffs' positions in the Department of Sewers, and paid Plaintiffs a sum of money. The Court signed the Order on September 19, 1990, terminating the case.

On July 21, 2008, Plaintiffs filed the instant Petition for Rule to Show Cause to Enforce Shakman Settlement. Plaintiffs assert that the Agreement required Defendants to submit pension payments on their behalf to the Laborers' Pension Fund of the Construction and General Laborers' District Council of Chicago and Vicinity for the years they were not working (June 1984 through October 1990). Plaintiffs further assert that the Defendants have refused to make these pension payments, in violation of the Agreement. Plaintiffs ask the Court to find Defendants in contempt of court, and also request that the Court issue an Order requiring Defendants to make the allegedly delinquent pension contributions on behalf of Plaintiffs.

## II. ANALYSIS

### A. Threshold Issues

Before reaching the merits of Plaintiffs' Petition, the Court must first consider the issue of jurisdiction. See Market Street Assocs. Ltd P'ship v. Frey, 941 F.2d 588, 590 (7th Cir. 1991) ("We remind the bench and bar of this circuit that it is their nondelegable duty to police the limits of federal jurisdiction with meticulous care . . . ."). District courts may not enforce settlement agreements "unless there is an independent basis of federal jurisdiction" apart from the fact that the original suit was brought in federal court. Lucille v. City of Chicago, 31 F.3d 546, 548 (7th Cir. 1994). In a case where a judgment order expressly incorporates a settlement agreement, the district court has such ancillary jurisdiction to enforce the settlement. Id. (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 381 (1994)). Here, the Order expressly incorporates the

2

Agreement; the Court is therefore satisfied that it has jurisdiction to enforce the terms of the settlement.

The Court also notes that no party disputes whether the Agreement is a legitimate and binding contract. See Collins v. Educational Therapy Center, 184 F.3d 617, 620 (7th Cir. 1999) (before determining whether to enforce a settlement, courts must first decide as a threshold issue "whether the parties actually entered into a valid and enforceable agreement . . . .") (quoting Carr v. Runyan, 89 F.3d 327, 331 (7th Cir. 1996)). In addition, the Court's review of the record in this case reveals that the Agreement is valid on its face. The Court will therefore move on to inquire into whether the Plaintiffs' Petition has merit.

## B. Plaintiffs' Petition to Enforce the Settlement

Plaintiffs assert that the Agreement provides that the City was obligated to pay into Plaintiffs' union pension fund payments for the work Plaintiffs missed after being terminated, and that the City failed to meet this obligation. Plaintiffs do not specify a precise dollar amount for the allegedly missing contributions. Defendants, however, argue that because they have paid the Plaintiffs the sum of $45,000.00 and reinstated Plaintiffs to their former positions, they have fully complied with the terms of the Agreement.

The terms of the Order and the Agreement do not expressly provide that Defendants were required to make pension contributions for the time Plaintiffs missed work due to their unlawful terminations. In fact, the terms of the Order and the Agreement clearly and unambiguously provide that Plaintiffs were to receive a sum of money[2], that Plaintiffs were to be reinstated to

---

[2] The Order provides that Plaintiffs were to receive $45,000.00. Agreed Judgment Order, at ¶ 1. The Agreement provides that Plaintiffs were to receive $75,000.00. Settlement Agreement, at ¶ 12A. The parties do not explain this discrepancy. The City asserts that it has paid Defendants $45,000.00. City of Chicago's Response to Plaintiffs' Petition, at 2-3. Plaintiffs assert that the City has paid them $75,000.00. Plaintiff's Response to the City of Chicago's Response, at 2.

their former positions with retroactive seniority and "career service status," and that this was to comprise the entirety of Plaintiffs' relief. The following are pertinent excerpts from the Order and the Agreement.

> Judgment is entered in favor of Plaintiffs Michael Busa and Steven Mpistolarides and against the City of Chicago in the amount of $45,000.00, as damages and not as back pay, including costs and attorneys' fees, in full and final satisfaction of all claims for damages and/or monetary relief claimed in the captioned matter or which could have been claimed. Defendant and the City [of] Chicago are further ordered to reinstate Plaintiffs to position[s] with the Department of Sewers in accordance with the Settlement Agreement between the parties.

Agreed Judgment Order, ¶¶ 1-2. "Plaintiffs and Defendant desire to settle any and all of their claims and defenses, including those which were not but could have been raised herein . . . .".

Settlement Agreement, ¶ 5.

> In exchange for the promises made by Defendants herein, Plaintiffs hereby release, waive and forever discharge Defendant[s] . . . from . . . any and all claims for salary, accumulation of vacation days, sick days and other benefits of employment, which Plaintiffs may have been entitled to at any time they were employed with the City and/or which could or would have accrued to them in the future had they remained employed with the City.

Id., ¶ 7. "Plaintiffs understand and agree that this Settlement Agreement is a final and total settlement of all claims they now have or may have in the future arising either directly or indirectly out of their employment relationship with the City . . . .". Id., ¶ 8.

> On September 16, 1990, the City shall reinstate Busa to the position of Sewer Bricklayer with the City of Chicago, Department of Sewers. Busa shall be afforded seniority in that title retroactive to June 30, 1984, and shall further be afforded career service status upon said reinstatement to that position. On September 16, 1990, the City shall reinstate Mpistolarides to the position of Sewer Laborer with the City of Chicago, Department of Sewers. Mpistolarides shall be afforded seniority in that title retroactive to June 30, 1984, and shall further be afforded career service status upon said reinstatement to that position.

Id., ¶ 12B-C.

4

It has long been a bedrock principle of contract law that contracts are to be interpreted according to their plain language. Norfolk S. Ry. v. James N. Kirby, Pty Ltd., 543 U.S. 14, 32 (2004) ("[W]here the words of a law, treaty, or contract have a plain and obvious meaning, all construction, in hostility with such meaning, is excluded.") (quoting Green v. Biddle, 21 U.S. 1 (1823)); Roxford v. Ameritech Corp., 335 F.3d 661, 664 (7th Cir. 2003) ("Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.") (quoting Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 855 P.2d 1263 (Cal. 1993)); Kallman v. Radioshack Corp., 315 F.3d 731, 736 (7th Cir. 2002); Bristol-Meyers Squibb Co. v. Ikon Office Solutions, Inc., 295 F.3d 680, 686 (7th Cir. 2002).

In this case, there is nothing ambiguous in the Order or the Agreement. Under the plain terms of the settlement, Plaintiffs were to receive only a sum of money and reinstatement to their former positions. Plaintiffs do not assert that Defendants failed to pay, or that Defendants did not duly reinstate the Plaintiffs. Instead, Plaintiffs argue that Defendants' promise to return Plaintiffs to "career service status" requires that Plaintiffs be provided with pension benefits covering the period between Plaintiffs' unlawful termination and their reinstatement. Plaintiffs offer no pertinent authority in support of this argument.

As Defendants correctly point out, the Seventh Circuit has clearly indicated that pension contributions are not automatically a part of reinstatement in these types of cases. In a case directly on point, Lucille, the Seventh Circuit confronted the very same issue currently presented to this Court. 31 F.3d at 546. The plaintiff in Lucille alleged that the City of Chicago violated the Shakman consent decree by terminating him for political reasons. Lucille, 31 F.3d at 547. The parties settled the case, and the City agreed to reinstate the plaintiff and pay him a sum of

5

money. Id. at 548. Four years later, the plaintiff filed a petition to enforce the settlement, asserting that the City should have paid him vacation, holiday, and sick pay, and pension benefits that would have accrued by the time of his reinstatement. Id. The district court denied the petition, and the Seventh Circuit affirmed, finding that the phrase "career service" did not automatically "entail retroactive leave and pension credits." Id. at 549. "Although Lucille contends that vacation and pension credits come with any 'reinstatement,' we join the district judge in rejecting that position . . . Additional benefits such as back pay and fringe benefits that would have accumulated during time missed (or that were lost on discharge) are negotiated and provided for separately." Id.

The Seventh Circuit has spoken clearly on the issue presented by Plaintiffs' Petition. If the Plaintiffs in this case wanted their settlement to include pension benefits for the work time they lost due to their wrongful termination, they should have specifically bargained for those benefits, and made those benefits an express part of the Order and Agreement. See id. Because this was not done, Plaintiffs' Petition must be denied.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Petition for Rule to Show Cause to Enforce Shakman Settlement is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: February 25, 2009